33 F.3d 980
 39 ERC 1477, 25 Envtl. L. Rep. 20,464
 MISSOURI MINING, INC.; BXB Corporation; Missouri & Iowa
Railway Company; City of Kirksville, Department
of Economic Development; and, James R.
Lenzini, Petitioners,
International Union, United Mine Workers of America, Intervenor,
v.
INTERSTATE COMMERCE COMMISSION; United States of America, Respondents,
Burlington Northern Railroad Company; Associated Electric
Cooperative, Inc., Intervenors.
 No. 93-3722.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1994.
Decided Aug. 29, 1994.
 
 John Thomas Sullivan, Arlington, VA, argued (William P. Jackson, Jr. and Barry A. Woodbrey, Jr., on the brief), for appellant.
 John H. LeSeur, Washington, DC, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Missouri Mining, Inc., BXB Corporation, Missouri & Iowa Railway Company, the City of Kirksville Department of Economic Development, and James R. Lenzini ("petitioners") filed a joint petition for review of a decision of the Interstate Commerce Commission (the "Commission") granting Burlington Northern Railroad Company ("Burlington") an exemption under 49 U.S.C. Sec. 10505 to construct and operate a seventeen-mile rail line. Petitioners argue that the Commission violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. Secs. 4321-4370d, in granting the exemption and acted improperly in refusing to revoke the exemption. Because we find that the Commission did not violate NEPA and properly granted Burlington an exemption under section 10505, we deny the petition.
 
 I.
 
 2
 Associated Electric Cooperative, Inc. ("Associated") operates the Thomas Hill Energy Center (the "Energy Center"), a coal-fired electric generating facility located near Moberly, Missouri. For many years, Associated generated electricity at the Energy Center by burning locally mined high-sulfur coal. To reduce the Energy Center's sulfur dioxide emissions as required by federal law, Associated decided to begin using low-sulfur coal from mines in the Powder River Basin of Wyoming. After determining that unit trains[1] represented the only feasible way of transporting the 2.4 to 3.6 million tons of coal needed to operate its facility each year, Associated evaluated several potential rail corridors. It wrote consultation letters to various federal, state, and local governmental agencies asking for environmental input concerning route alternatives. Associated also retained an engineering firm and an environmental firm to study six specific routes: two all-Burlington routes and four routes incorporating lines of Norfolk and Western Railway Company ("Norfolk & Western"). Associated submitted the results of these studies to the Commission's Section of Environmental Analysis ("SEA").[2]
 
 
 3
 During this preliminary consultation and evaluation, Associated solicited bids from Burlington and Norfolk & Western. After several rounds of bidding, Associated selected Burlington to ship its coal. Burlington is the only carrier capable of providing direct single-line routing from Wyoming to the Energy Center. Under Burlington's proposal, it planned to construct ten miles of line over abandoned rail right-of-way from its main line near Bevier, Missouri, to Binkley, Missouri, and to upgrade seven miles of a spur from Binkley to the Energy Center.
 
 
 4
 SEA met with representatives from Associated, Burlington, and the two consulting firms regarding the proposed construction project. Additionally, an SEA environmental specialist visited the six alternative routes and determined that Burlington's proposed routing would produce the least amount of land disturbance. Burlington submitted an environmental report on the proposed project to SEA. 49 C.F.R. Sec. 1105.7. The responses received from the various governmental agencies were appended to the report.
 
 
 5
 SEA granted Burlington's request to retain an independent third-party consultant to prepare under SEA's supervision the appropriate environmental documentation for the construction of the proposed line. 49 C.F.R. Sec. 1105.10(d). Burlington then asked the Commission to waive its requirement that an environmental impact statement ("EIS") be required for rail construction proposals and to authorize the preparation of an environmental assessment ("EA").[3] SEA orally informed Burlington that the third-party consultant could prepare an EA and that the EA could focus on Burlington's preferred route and an alternative Burlington route.
 
 
 6
 Burlington subsequently petitioned the Commission for an exemption under section 10505 from the prior approval requirements of 49 U.S.C. Sec. 10901 to construct and operate the line. The Commission conditionally granted the exemption, subject to the Commission's completion of its environmental review of the proposal. On March 23, 1993, SEA issued a detailed EA. The EA concluded that Burlington's preferred route would not significantly affect the quality of the human environment if four mitigation measures were adopted and that an EIS was not required. The EA was served on all parties and appropriate governmental agencies, and a notice was published in the Federal Register. 58 Fed.Reg. 16,416 (1993).
 
 
 7
 Three comments were filed in response to the EA, including comments from David Masters, who represented several entities interested in preserving Norfolk & Western's line running from Moberly to Moulton, Iowa, (the "Moberly-Moulton line"), which the Commission had recently given Norfolk & Western permission to abandon. Norfolk & W. Ry.--Abandonment Exemption--In Randolph, Macon, Adair, and Schuyler Counties, Mo., and Davis, Appanoose, and Monroe Counties, Ia., No. AB-290 (ICC Feb. 16, 1993). Masters argued that Burlington should run its trains from Wyoming to Albia, Iowa, south over the Moberly-Moulton line to Excello, Missouri, then west over a four-and-one-half mile spur from Excello to Binkley, and finally over the previously mentioned seven-mile spur from Binkley to the Energy Center. SEA considered Masters' comments, but determined that he had not shown that his suggested route was a feasible alternative.
 
 
 8
 On June 11, 1993, after the time for comments had expired, petitioners filed a petition to revoke the conditional grant of the exemption. Like Masters, petitioners argued that the Moberly-Moulton line and the two spur segments from Excello to the Energy Center should be used to transport Associated's coal.[4] Burlington and Associated filed responses to the petition. SEA issued supplemental recommendations addressing Masters' comments and the petition to revoke. On September 13, 1993, the Commission in a thorough, comprehensive decision denied the revocation petition and granted final approval of the exemption. Burlington N. R.R.--Construction & Operation Exemption--Macon and Randolph Counties, Mo., 9 I.C.C.2d 1161 (1993).
 
 
 9
 Petitioners filed this joint petition for review.[5] The Commission denied petitioners' request to stay the effect of the exemption pending the completion of judicial review. Petitioners then asked this court for a stay pending review. We initially granted their request, but dissolved the stay on January 4, 1994. At oral argument, Associated informed us that the Burlington line has been completed and is now being used.
 
 II.
 
 10
 Petitioners first argue that the Commission violated NEPA and the Commission's implementing regulations when it granted Burlington's request to waive the preparation of an EIS. NEPA requires federal agencies to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. Sec. 4332(2)(C); 40 C.F.R. Sec. 1502.3. More specifically, the Commission's regulations provide that an EIS "will normally be prepared for rail construction proposals." 49 C.F.R. Sec. 1105.6(a). The regulations further provide, however, that an applicant can seek to demonstrate "that an EA, rather than an EIS, will be sufficient because the particular proposal is not likely to have a significant environmental impact." Id. Sec. 1105.6(d).
 
 
 11
 We review the Commission's decision to waive the preparation of an EIS under the arbitrary-and-capricious standard. Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 375, 109 S.Ct. 1851, 1860, 104 L.Ed.2d 377 (1989); Goos v. ICC, 911 F.2d 1283, 1291-92 (8th Cir.1990). Having reviewed the record, we conclude that the Commission's decision was neither arbitrary nor capricious, for the preliminary studies, the environmental report, the comments received from the governmental agencies, and SEA's site visit all indicated that the proposed project would have no significant environmental impact.
 
 
 12
 Nonetheless, petitioners contend that the waiver was improper because it was granted orally and not made public. We reject this argument, as petitioners have cited no statute or regulation requiring that such a waiver be in writing and be published. At any rate, the Commission explained in the EA that it had granted the waiver and the bases on which it had done so. Accordingly, petitioners cannot complain that the public did not have written notice of the Commission's decision to waive the preparation of an EIS.
 
 
 13
 Petitioners next argue that by allowing the EA to focus on the two Burlington alternatives, the Commission improperly waived NEPA's requirement that federal agencies "study, develop, and describe appropriate alternatives" to proposed courses of actions. 42 U.S.C. Sec. 4332(2)(E). Petitioners' argument is without merit, for they mischaracterize the Commission's action. The Commission did not waive its obligation to study appropriate alternatives; rather, it merely determined that the two Burlington proposals were the only alternatives that reasonably needed to be evaluated. See Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 195 (D.C.Cir.) (stating that the agency bears the responsibility for deciding which alternatives need to be considered under NEPA), cert. denied, --- U.S. ----, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991); City of New York v. United States Dep't of Transp., 715 F.2d 732, 742 (2d Cir.1983) (same), cert. denied, 465 U.S. 1055, 104 S.Ct. 1403, 79 L.Ed.2d 730 (1984).
 
 
 14
 In a related argument, petitioners contend that the Commission violated section 4332(2)(E) by not considering the Moberly-Moulton line as a potential alternative. Under section 4332(2)(E), the Commission is required to consider only reasonable, feasible alternatives. Olmsted Citizens for a Better Community v. United States, 793 F.2d 201, 209 (8th Cir.1986). Because the EA concluded that the proposed rail line would have a minimal environmental effect, the range of alternatives that the Commission needed to consider was narrow. Id. at 208. As we have stated, "the range of alternatives that reasonably must be considered decreases as the environmental impact of the proposed action becomes less and less substantial." Id. It would be " 'something of an anomaly' to require that an agency search for more environmentally sound alternatives to a project which it has determined ... will have no significant environmental effects anyway." Id. (quoting City of New York, 715 F.2d at 744).
 
 
 15
 Accordingly, to succeed on their claim, petitioners must establish that their preferred route is within the range of alternatives that reasonably needed to be considered. Id. at 209. They have not done so, for the record clearly reveals that petitioners' desired route is neither economical nor practical. Routing over the Moberly-Moulton line would involve the use of two rail lines, thereby forfeiting the economic advantages of a direct single-line routing. Burlington does not own and has no right to use the Moberly-Moulton line. Norfolk & Western, which does own the line, did not make a bid based upon routing over it; instead, Norfolk & Western believed that a different route would be more economical and feasible. Indeed, Norfolk & Western has abandoned the Moberly-Moulton line and has removed several miles of track in Iowa. We also note that petitioners have not established that the Excello-to-Binkley spur could be upgraded to accommodate unit coal trains, for the record indicates that a steep grade on this segment of track currently limits its use to thirty-car trains, which would result in costly, time-consuming multiple train movements in delivering the 110-car unit trains to the unloading facilities at the Energy Center. We last note that petitioners have not demonstrated that their preferred route is environmentally superior to the route already constructed by Burlington.
 
 
 16
 In short, we find that the Commission did not violate NEPA by not preparing an EIS and by not analyzing the Moberly-Moulton line as a potential alternative. Accordingly, we reject petitioners' contention that the Commission arbitrarily and capriciously concluded that the Burlington line would have no significant environmental impact.
 
 
 17
 Petitioners last argue that the Commission acted improperly in refusing to revoke the construction-and-operation exemption. Section 10505 provides that the Commission shall exempt a rail transportation transaction from the certification process required by 49 U.S.C. Sec. 10901(a) if it finds (1) that application of section 10901 is not necessary to carry out the policy of 49 U.S.C. Sec. 10101a and (2) that the transaction is of limited scope or the application of section 10901 is not needed to protect shippers from the abuse of market power. Having considered petitioners' arguments for revoking the exemption, as well as the Commission's well-stated, well-supported reasons for not doing so, we find the Commission's refusal to revoke the exemption entirely proper.
 
 
 18
 The joint petition for review is denied.
 
 
 
 [1]
 Unit trains are trains of 100 or more cars that cycle as a unit between one origin and one destination
 
 
 [2]
 Formerly named the Section of Energy and Environment
 
 
 [3]
 An environmental impact statement is a detailed document required under NEPA for major federal actions significantly affecting the quality of the human environment. 42 U.S.C. Sec. 4332(2)(C); 40 C.F.R. Secs. 1502.1, 1508.11. An environmental assessment, on the other hand, is a more concise document that contains sufficient information for determining whether to prepare an environmental impact statement or to make a finding of no significant environmental impact. 40 C.F.R. Sec. 1508.9(a)(1)
 
 
 [4]
 Except for Lenzini, who owns property along the newly constructed Burlington line, all petitioners have a direct economic interest in preserving the Moberly-Moulton line. Missouri Mining wants the Moberly-Moulton line to remain operational because it expects to operate a landfill on property near the line. BXB Corporation is a railroad operator that is interested in purchasing and operating the line and has formed Missouri & Iowa Railway as the vehicle to do so. The City of Kirksville is located on the line
 
 
 [5]
 United Mine Workers of America has intervened on behalf of petitioners, and Associated and Burlington have intervened in support of the Commission's decision